May it please the Court, Ayanna Jenkins Toney O'Ping on behalf of the plaintiff Lanell Jones and I'd like to reserve some time for rebuttal please. Please watch your clock. Thank you. This court should reverse the District Court's rulings to grant judgment as a matter of law in favor of the Oakland Police Department because the decisions that were made during the pretrial conference. A series of decisions were made that excluded relevant credible evidence that would have shown and established the notice requirements under Manell. The Oakland Police Department's repeated failures to comply with Judge Henderson's orders to comply with the independent monitors falls completely outside of the realm of a mere aberration. The department's failure to comply evidence is a pattern and a practice of systemic police misconduct and abuse. The corrosive effects on the public amounts to a deliberate indifference to the rights of persons with whom the police come into contact. This term was used in the Supreme Court case of City of Canton. I believe that had I been allowed to introduce to the jurors the independent monitoring report, which was my Exhibit 16, as well as Judge Henderson's orders, which I would have been able to establish the nexus required to satisfy Manell. I also believe that the District Court's decision to deny the admittance of the independent monitors' quarterly report stands afoul of this Court's ruling in Montiel. The fact of the matter is ---- So let me just, I'm trying to look at my notes here. And one of these reports, the, I think it was the fifth quarter monitoring report, was covering a period that was after the time of the shooting. And so there was a relevance issue. What's your response to that? My response to that, Your Honor, is that Exhibit 16 comprised several different subparts. The district court judge had plaintiff's counsel to subdesignate several portions of the independent monitoring report. The one that the Court just cited was being used to demonstrate that that was one of the personnel assessment systems that the police department had agreed to do. It wasn't for the period that was covering. There was another subpart to Exhibit 16 that specifically covered the time frame in which the plaintiff contends the Oakland Police Department was not in compliance with the independent monitor's orders, and that governed the fact or because of that, the plaintiff contends that it was more likely than not that this would occur because of the actions of the police not being in compliance. So if I'm understanding this right, the monitoring report was monitoring compliance with the settlement agreement. That is correct. Is that right? And so the settlement agreement, I know the district court was not in compliance with the settlement agreement. And so the settlement agreement was not in compliance with the settlement agreement. And so the settlement agreement can't be used to show the city's liability. The city, in fact, did not admit any liability. And so the one of the prongs of the Court's determination was based on this on its face can't be used for the purpose you want to introduce it. Actually, the language in the negotiated settlement agreement does not say on its face exactly that. That was the reasoning that the district court gave. What it said is no third party can come in as a third party beneficiary to the settlement agreement, meaning stand and claim for monetary damages, as well as the city's not admitting liability, and therefore no third party can come in and enforce the negotiated settlement agreement. The sole purpose for wanting to have the jurors hear that or have the evidence of the negotiated settlement agreement was so that it could establish the constructive and objective notice requirements under Monell to establish that the city was on notice of the pattern and practice of abuse within its department, that it had agreed, in fact, to correct this abuse, and that it during the time that the unarmed Derek Jones was shot and killed by this particular officer, that during that period of time they were out of compliance. So the city denied that there was any abuse. So the city was on notice that the plaintiffs had alleged abuse. But since they denied abuse, how does that show the city was on notice of abuse? They were just on notice that someone had alleged that. Well, I could take the words of Justice O'Connor when she suggested that when a policy when there is unconstitutional conduct that is so pervasive as to imply actual or constructive knowledge on the part of policy makers whose deliberate indifference, evidenced by a failure to correct, once the need for training became so obvious, would be attributable to the municipality. Both methods, the obviousness method and the constructive notice method, are discussed in the case of Sornberger v. City of Knoxville. So the argument there is that the negotiated settlement agreement clearly demonstrates that there was a need to correct and to train. And during the time period that So are you saying that if a municipality agrees to settle a claim of abuse without admitting liability, but as it says I think in the preamble, well, we all agree that police practices can always be better, but you're saying that any settlement agreement establishes that the city had engaged in a pattern of practice of abuse. Is that your position? No, Your Honor, not exactly. What I'm saying is the existence of the settlement agreement in conjunction with the independent monitor's report stating that they were not in compliance with the orders or the agreed terms of the settlement agreement establishes the notice, meaning that it's not just the fact that a municipality agrees to enter to a settlement agreement for purposes of settling a lawsuit. It's the fact that they agree to do it, and then they fail to adhere to what is what the recommendations are. And so the recommendations, did the monitoring report document incidents of alleged excessive force, or was it documenting failures to institute reporting programs or the like? So specifically with regards to the officers involved in my case, and this would go to my exhibits 14 and 15, they were the two officers' internal audit files. And specifically there was a personnel assessment system that the independent monitor was overseeing during the time period when Derrick Jones was killed. According to that past system is what they call it, if an officer has exhibited or received several complaints, and if an officer has used force, and use of force could be just pulling his gun or having to put someone down on the ground, what happens is after a certain period of time and there's too many of those flags, it flags that officer and they're supposed to pull that officer off the street to give the independent monitor a chance to review all of these cases during that time period. When my client's husband was shot and killed, they were not in compliance with that portion of the independent monitoring system. And so they were not in compliance with the force requirements to reach the city municipality. Thank you. I'll reserve for rebuttal. Good morning. Jennifer Logue on behalf of the City of Oakland. Appellant's argument is fundamentally flawed. And it's fundamentally flawed because this entire action arises from an allegation of an excessive use of force by two individual officers. And for that reason, the jury verdict exonerating the officers of this excessive use of force precludes municipal liability here. She is only arguing that granting the Rule 50 motion that the city brought was error. She is not challenging the underlying verdict finding the officers' use of force constitutional. You cannot get to Monell liability until you reverse the jury verdict. The document she is talking about do not go to whether or not the officers' use of force was reasonable at the time they shot the decedent. Therefore, she cannot establish prejudicial error here with regard to the jury verdict and whether or not these documents were properly excluded. Setting that aside, the documents were properly excluded because, first of all, Exhibit 13 came in as hundreds of pages of various documents split apart by the district court over numerous pretrial conferences into 13A through F. A couple of those documents are not even orders of Judge Henderson, and the court said, I'm not even going to get to the negotiated settlement agreement. As you've already acknowledged, the settlement agreement on its face says it cannot be used to establish liability. Well, the city was not admitting liability in that case, and it cannot be enforced by third parties. The distinction she's trying to make between she's not trying to enforce the settlement agreement, she's only trying to use it to establish liability is a distinction without difference. That is enforcement. And that's why she's arguing notice. She's arguing that the negotiated settlement agreement put us on notice of? Failure to comply with the monitoring provisions. That's what she's just made. That's what she's just argued. Failure to comply with a provision of the personal assessment system, I think, is what she articulated. We're not in compliance with this one provision, the personal assessment system. And your argument just a minute ago was that that's a distinction without a difference, that there's no difference between this notice that she's arguing and an attempt to enforce the settlement agreement. Well, it's the independent monitor's report which says we weren't in compliance with the personal assessment system. The negotiated settlement agreement is a completely and totally different document. That's Exhibit 13. The independent monitor's report is Exhibit 16. Yes. Okay. And the negotiated settlement agreement doesn't put us on notice that we're out of compliance with anything. It is the agreement that says we agree to do these different things. Right. So opposing counsel suggests that the City was on notice that there was a pattern and practice of excessive use of force, or otherwise the City wouldn't have entered into this settlement agreement. So the fact of entering into the settlement agreement meant that the City was aware of these allegations. And then subsequently, the City didn't comply with the obligations that it had undertaken in order to remedy this problem. So wasn't that, didn't that have some relevance and some probative force with respect to opposing counsel's claims? It may have had probative force if she had been able to articulate that every portion or any portion that we were out of compliance with as identified in this independent monitor's report, which was objected to by the City again. This is a third party's opinion that we're out of compliance. This is not an agreement or a document prepared by the City that we're out of compliance to note. But she's never been able to articulate that the sections that we were out of compliance with put us on notice that there, that these two individual officers were not properly trained or that any officers weren't properly trained such that they were putting citizens at risk at the use of, citizens at risk for the use of excessive force. The one that she focuses on is this personal assessment, personal assessment system, that we had not implemented that personal assessment system. And then she ties that to Exhibits 14 and 15, which are these particular individual officers' IA files. But she's not challenging the exclusion of these IA files in this appeal. So, again, it ties to something that she's not even arguing here. The personal assessment system only comes into play if you can actually establish that had the personal assessment system been in place, it would have identified these officers as problem officers with regard to the use of force. Therefore, they would have been taken off the street, and then maybe this incident wouldn't have happened. The leaps you have to get to, to apparently establish what she's saying, they're just not there. They're not before this Court in this record anywhere. That's why the exclusion of these documents isn't prejudicial. She claims it puts us on notice, but she hasn't established that it put us on notice that these officers were going to go out and allegedly use force. But, once again, we have an exoneration here by a jury. And unless and until she can overturn that exoneration, we don't have Monell. Unless you have anything else. Sotomayor, did you have a question? Offered with respect to the compliance report? Was there a limiting? As I understand it, the district court kept it out because it's probative value was outweighed by its prejudicial value? Is that? I'm going to let my co-counsel speak to that. She was part of the trial. I only argue the Rule 50 motion, so I will sit down and let her address what occurred at the trial. Good morning, Your Honors. May it please the Court. My name is Amy Hamoy-Pereira. I'm counsel for the defendant officers Omar Pérez — Omar Dazaquiros and Heriberto Pérez-Ángeles. The Court just asked a question regarding a limiting instruction. And, no, there was no offer of a limiting instruction. In fact, because there were multiple grounds upon which Exhibit 16 and Exhibit 13 were excluded by the district court in its fourth pretrial order, that issue was never discussed once the trial actually began. And we'd like to emphasize for this Court today that the district court worked very hard as a gatekeeper in this litigation. Both parties did have some difficulties in meeting all of the guidelines that had been set forth in the pretrial conference orders. You just used gatekeeper. I don't mean to be hyper-technical, but are you taking the position these are expert opinions? No, Your Honor. I'm not. It's a much lower standard, right? Agreed. A much lower standard for admission. Okay. Agreed. I guess really the best description would be to say the district court is also having to manage a complicated litigation with a number of parties, differing positions, and a lengthy complaint that had several causes of action with several moving pieces of evidence that were presented. Ultimately, the district court required both sides to review their evidence carefully, required multiple pretrial conferences in order to ensure that the trial was conducted in a smooth and continuous manner, that the evidence that was presented would be in line with the federal rules of evidence. And ultimately, the jury in this case heard from several witnesses, the defendant officers who were the officers that night who investigated this incident. They had been flagged down by a victim of domestic violence who reported her boyfriend, Derek Jones, had choked her and tried to kill her. She described that person to these officers, and they went to arrest him. At the point that he encountered the officers, he tried to run away. He was tasered. He continued to run away. The officers heard the sound of a gun falling. The decedent ended up hiding from the officers at one point and then emerging from behind a parked car, repeated refusals to obey the officers' commands. And ultimately, the officers were forced to make that objectively reasonable decision to fire their weapons. All of the evidence that was presented to the jury included the relevant evidence of the officers who were involved that night, officers who came to the scene afterward to render first aid or paramedic help, the plaintiff who described her relationship with the decedent, and the decedent's girlfriend who also described her relationship with the decedent. Ultimately, in this appeal, the appellant has asked for a redo of documents or a review of documents and witnesses that the district court reasonably excluded. The witnesses listed in the appeal include Captain Joyner, Sergeant Abdullah, Officer Higgins, and the coroner, Robert Zadellas. The three officer witnesses that were listed in the appeal had nothing to do with this particular incident. They were not percipient witnesses to the events of that night. And even if they had testified or had been brought in, any testimony they would have been asked about is purportedly related to training of the officers or purportedly related to city policy, none of which is relevant to the jury's ultimate finding in this case that the officers acted reasonably. The jury concluded after hearing all of the evidence that these officers were objectively reasonable in their decisions to fire. The documents that have been described, Exhibit 13 and Exhibit 16, as this Court is aware, go to the issue of whether or not there may be some potential link to municipal liability. Again, not relevant to my clients and to the officers in this case who were found to be objectively reasonable. And the final witness who is mentioned in the appeal is Carolyn Johnson, who was the mother of the plaintiff. If she had testified, she would have likely talked about damages, again, unrelated to the jury's verdict. There's no articulable fact or persuasive or controlling authority that this Court has been presented with that could lead to a reversal of the verdict in this case. Ultimately, it seems that the plaintiff's brief focuses on a general feeling of unfairness. It was unfair that there were so many pretrial conferences. It was unfair that the plaintiff had to break out her hundreds of pages of documents and outline for the Court which witnesses, if any, could testify about the information therein, and what would be done in terms of trying to overcome any of the evidentiary challenges. Ultimately, the jury did their job, and the district court did its job. The district court had the parties come in, organized their case, controlled the flow of the trial, allowed both sides to present their evidence, gave plaintiff an opportunity to present rebuttal, which she did not do, instructed the jury, and the jury came back, did their job, and rendered a unanimous verdict that the officers acted objectively reasonable. That pretty much sums up your position. Yes. Yes, Your Honor. Thank you. Thank you, Your Honors. May it please the Court. Opposing counsel has raised many issues that I initially was not even going to argue orally this morning. First of all, with respect to the pretrial conferences, the district court's standing order stated that any motions in Lemonnet were to be served and filed 28 days prior to the first date of the pretrial conference. Our pretrial conference schedule date was February 22nd, and opposing counsel served me and filed motions in Lemonnet eight days before the pretrial conference. Can I interrupt you for a moment and just ask you to address the opposing counsel's argument that because of the jury verdict finding that the officers' use of force was reasonable, there is no Monell claim, there is no question of prejudice. Basically, there's no case appeal here. Could you address that? Yes, I can. The Court's decision to grant the City of Oakland's Rule 50 motion requires this Court to review what happened within the district court de novo. So that means to review everything that occurred, including what occurred during the pretrial conference. The pretrial conference is where the district court made the decision to exclude the exhibits that included the officers' IA files, which contrary to opposing counsel's statement, most definitely are part of the appeal. I'm requesting review, de novo review, of what occurred during the pretrial conferences where the evidence was excluded. I didn't see specifically in your case that exhibits 14 and 15, which I take it are the IA files. Yes, Your Honor. Were argued as being improperly that the district court abused its discretion in excluding them. Did you do that? Yes, I did, Your Honor. I did. It was argued extensively during the pretrial conference, and it was argued extensively during the Rule 50 motion. Was it in your appeal here? Yes. It was not specifically stating just 14 and 15. It was talking about all of the exhibits that were excluded. Thank you, Your Honor. I submit. Okay. The case of Jones v. City of Oakland is submitted.
judges: Schroeder, Ikuta, Christen